UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael D. Brooks, #273967, ) | |
| ) | Civil Action No. 4:14-cv-03629-RBH-KDW |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Investigators Justin Head, and ) | REPORT AND RECOMMENDATION |
| Investigator Banister, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff, proceeding pro se, filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights by falsely arresting him, falsely imprisoning him, and using excessive force against him. ECF No. 1. This matter is before the court on Defendants' Motion for Summary Judgment. ECF No. 95. The court entered a *Roseboro* Order,[1] advising Plaintiff of the importance of such motions and of the need for him to file adequate responses. ECF No. 96. Plaintiff filed a Response in Opposition to Defendants' Motion on December 14, 2015. ECF No. 99. Defendants filed a Reply on December 23, 2015, ECF No. 103, and Plaintiff filed a Sur-Reply on January 4, 2016, ECF No. 104. Therefore, this matter is now ripe for review. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because this Motion is dispositive, a Report and Recommendation is entered for the court's review.

I.   Background

---

[1] The court entered a *"Roseboro* order*"* in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

This lawsuit arises from a police chase and later Plaintiff's arrest in Florence County, South Carolina on March 14, 2014. ECF No. 1. Plaintiff represents that he ran out the backdoor of his mother's residence after he noticed police had arrived there. *Id.* at 3. After about 10 minutes in the woods, Plaintiff alleges he "decided to come out" but was wading through 8-12 inches of water. *Id.* Plaintiff alleges that Defendant Banister rushed towards him and shouted "Get down! Get Down!" *Id.* According to Plaintiff, he got down on his hands and knees to lay flat but the water was too deep for him to lie flat. *Id.* Plaintiff alleges that Defendant Banister had his taser pointed at Plaintiff's back while Plaintiff attempted to lie flat, but "the water came up over [his] head." *Id.* When Plaintiff told Defendant Banister that he could not lie flat, he alleges that Defendant Banister tased him in the back "for no reason" and Plaintiff "was under water thinking he [was] trying to kill [him]." *Id.* Plaintiff maintains that Defendant Banister then dragged him out of the water by his feet and handcuffed him. *Id.* Plaintiff represents that he was not resisting arrest and was not charged with resisting arrest. *Id.* Plaintiff alleges that he saw a doctor and takes medication for the water that got into his lungs and for pain in his chest. *Id.*

Next, regarding his arrest, Plaintiff alleges that Investigator Justin Head ("Defendant Head") "lied in his Affidavit to Judge Debra Jackson to get her to sign an arrest warrant." *Id.* at 3-4. Plaintiff represents that he is 6 feet 3 inches tall and is "slim," while the given description of the man who committed the crime was 6 feet one inch tall and heavy set. *Id.* at 4. Additionally, Plaintiff indicates several other alleged inconsistencies between the Police Report and his arrest. *Id.* Further, Plaintiff alleges that Defendant Head changed Plaintiff's interview statement, adding things Plaintiff did not say. *Id.* at 5. Additionally, Plaintiff alleges that the investigators did not have arrest or search warrants at the time of his arrest. *Id.*

For his police brutality/excessive force claim, Plaintiff asks that "the investigator be punished and fired." *Id.* at 6. Furthermore, he seeks $800,000 in actual damages and $10,000,000 in punitive damages. *Id.* Based on the alleged false affidavit and because Defendant Head "did not meet the deadline required of the SCRCP, Rule 3 [and] by not getting the warrants or bond filed with the clerk of court within 15 days," Plaintiff asks that his affidavits be dismissed and the charges against him be dropped. *Id.* Further, he requests that he be immediately released from Florence County Detention Center. *Id.* Plaintiff seeks damages for the pain and suffering he alleges to have suffered since March 29, 2014, and actual and punitive damages of $1,000,000. *Id.*

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary

judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

III.    Analysis

    1.   False Arrest and False Imprisonment

Defendants argue Plaintiff's causes of action for false arrest and false imprisonment are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). ECF No. 95-1 at 4. Defendants represent that "Plaintiff was convicted of five charges as a result of this incident in the Court of General Sessions in Florence County, South Carolina on June 18, 2015." *Id.* at 5. The undersigned agrees that Plaintiff's causes of action are barred.

In *Heck*, the United States Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 486-87 (emphasis in original) (footnotes omitted). However, the rule in *Heck* does not apply to claims of false arrest in the pre-conviction context, when criminal charges are still pending. *See Wallace v. Kato,* 549 U.S. 384, 393-95 (2007). However, in the instant action,

4

Plaintiff has been convicted of charges resulting from his alleged "false arrest." In *Heck*, the Supreme Court ruled that until a criminal conviction is set aside, any civil rights action based on the conviction and related matters is barred. Until the underlying conviction or sentence has been invalidated, a prisoner "cannot use a § 1983 action to challenge 'the fact or duration of his confinement,' [but] must seek federal habeas corpus relief (or appropriate state relief) instead." *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)).

Based on the undersigned's finding that Plaintiff's causes of action for false arrest and false imprisonment are barred under *Heck*, the undersigned recommends Defendants be granted summary judgment as to these causes of action.

2.     Excessive Force

Defendants argue that Plaintiff's cause of action for excessive force fails because the use of force was objectively reasonable as a matter of law. ECF No. 95-1 at 6. Defendants represent that the only factual allegation related to this claim is that Defendant Banister tased Plaintiff in the back when he would not get flat on the ground. *Id.* Defendants argue that Plaintiff's cause of action appears "to be directed solely at [Defendant] Banister since he is the only named Defendant present at the scene and was the one who employed a taser upon the Plaintiff." *Id.*

Whether law enforcement officers used excessive force when making an arrest is analyzed under the Fourth Amendment and its "reasonableness" standard. *See Graham v. Connor,* 490 U.S. 386, 395 (1989). The *Graham* Court discusses seizure of a "free citizen" in the context of an arrest or investigatory stop and holds that the protections of the Fourth Amendment guarantee citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. *Id.* at 394. Furthermore, the Court held that "its proper application requires careful

5

attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. There, the Supreme Court recognized "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Further, the Court held that there is not a precise mechanical application of the standard, but "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Additionally, the Court instructs that an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Id.* at 396-97. Therefore, guided by the authority in *Graham*, the undersigned must examine the totality of the circumstances and the uncontested facts, viewed in the light most favorable to Plaintiff, to determine whether Defendants' use of force was reasonable.

As established in the Fourth Circuit Court of Appeals recent case of *Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016), the undersigned must take the facts in the light most favorable to the Plaintiff and determine whether Defendant Banister's conduct violated a constitutional right. Defendants argue that all three *Graham* factors weigh in favor of Officer Banister and against Plaintiff. ECF No. 95-1 at 7-9. In his Response to

6

Defendants' Motion, Plaintiff maintains that he spoke with law enforcement officers but refused to go with the officer unless they could show Plaintiff an arrest warrant. ECF No. 99 at 2. Plaintiff represents that officers told Plaintiff he was coming with them whether he wanted to or not, and so Plaintiff ran into the woods because he was in fear for his life. *Id.* Thereafter, Plaintiff re-alleges the facts contained in his Complaint regarding his encounter with Defendant Banister and his arrest that followed. *Id.* Specifically, Plaintiff alleges that Defendant Banister "looked around to make sure no one was in the woods to see him and shoot (sic) Plaintiff with the taser and tryed (sic) to drown Plaintiff in the creek of water." *Id.* After his arrest, Plaintiff alleges that the investigators did not give Plaintiff any medical attention for his cuts and did not take Plaintiff to the hospital. *Id.* However, Plaintiff represents that he did "go to medical to seek treatment at the Effingham County Jail for consumption of water." *Id.*

The first *Graham* factor is the severity of the crime at issue, and the undersigned finds this factor weighs in Defendant Banister's favor. Here, Plaintiff was wanted for his participation in a home invasion that involved holding an elderly couple at gunpoint. ECF No. 95-2 ¶ 5, 13, ECF No. 95-2. Further, on March 14, 2014, arrest warrants were issued for Plaintiff's arrest for kidnapping, armed robbery, first-degree burglary, possession of a weapon during the commission of a violent crime, and felony possession of a firearm. ECF No. 95-2 at 18-22. The undersigned finds these were serious crimes for which Plaintiff faced potential lengthy prison sentences. Therefore, the first *Graham* factor weighs in favor of Defendant Banister.

Under the second *Graham* factor, the undersigned must consider whether Plaintiff posed an immediate threat to the safety of Defendant Banister or others. Evidence demonstrates that Defendant Banister reasonably perceived that Plaintiff posed a threat to officer safety and the public's safety. *See* ECF No. 95-3. In his affidavit, Defendant Banister attests that he was alone

in the woods when Plaintiff approached him. *Id.* ¶ 7. Defendant Banister represents that Plaintiff turned his back, and Defendant Banister "felt that he was going to run." *Id.* ¶ 8. Moreover, Defendant Banister avers:

> Because of the suspect's greater size and the fact that we were alone in the woods, I did not want to make physical contact with him. In addition, I did not know if he had a weapon. As [Plaintiff] stepped away from me, I deployed my taser into the center of his back. [Plaintiff] immediately stood straight up stiff and fell backwards into a small creek. Although he was wet, [Plaintiff] was in no danger of drowning because the creek was very shallow. At the end of the five-second taser cycle, I ordered [Plaintiff] to turn over to his stomach and place his hands behind his back. The suspect complied at this point and I was able to handcuff him.

*Id.* ¶ 8. Whether Plaintiff complied with Defendant Banister's instructions to him, however, are in dispute. Plaintiff claims to have complied with Defendant Banister's every instruction. *See* ECF No. 99. Nevertheless, Plaintiff represents that Defendant Banister tased him in his back which confirms Defendant's Banister's representation that Plaintiff was facing away from him. It is also undisputed that Plaintiff fell into water upon being tased. However, the undersigned finds that Defendant Banister was forced to make a split second decision, was alone in the woods, and from his perspective, Plaintiff posed a threat to him. Therefore, the undersigned finds the second *Graham* factor also weighs in Defendant Banisters's favor.

The third factor—whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight—presents a more difficult examination. Here, it is undisputed that Plaintiff fled from officers into the woods on the day he was arrested. *See* ECF Nos. 1 at 3, 99 at 3. Though Plaintiff represents that he complied with Defendant Banister's instructions, from Defendant Banister's perspective, Plaintiff could have fled back into the woods. Therefore, taken in the light most favorable to Plaintiff, the undersigned finds this factor could go either way.

Overall, in considering all three *Graham* factors, the undersigned finds evidence demonstrates that the amount of force used was reasonable in order to apprehend Plaintiff. Under the objective reasonableness test, the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force. The officer's use of a single taser in this situation was reasonable. *See Russell v. Wright*, 916 F. Supp. 2d 629, 643 (W.D. Va. 2013) ("Given the dearth of caselaw on the use of tasers in excessive force cases, particularly within the Fourth Circuit, the court simply cannot say that Wright's use of his taser under these circumstances violated clearly established law."); *Fordham v. Doe*, No. 4:11-CV-32-D, 2011 WL 5024352, at *8 (E.D.N.C. Oct. 20, 2011) (finding officer's one-time use of taser reasonable under the totality of the circumstances); *Yarborough v. Montgomery*, 554 F. Supp. 2d 611 (D.S.C. 2008) (holding officer did not use excessive force in using single blast from taser to subdue citizen).

Therefore, based on the evidence before the court and the case law on use of excessive force, the undersigned recommends that the court grant Defendants' Motion for Summary Judgment regarding Plaintiff's cause of action for excessive force.

### 3. Qualified Immunity

Defendant Banister maintains the court should grant his motion because he is entitled to qualified immunity on Plaintiff's excessive force claim. ECF No. 95-1 at 11. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

Considering the facts alleged, taken in the light most favorable to Plaintiff, the undersigned agrees. The record before the court shows that Defendant performed the discretionary functions of his respective official duties in an objectively reasonable fashion. As reasoned above, Defendant did not transgress any statutory or constitutional rights of Plaintiff. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendant be granted qualified immunity.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 95, be granted, and this case be dismissed.

    IT IS SO RECOMMENDED.

*[signature: Kaymani D. West]*

February 19, 2016                                              Kaymani D. West
Florence, South Carolina                                       United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

11